UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDGETT JANE MARIE FELIX,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:16-cv-698-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is granted.

I.    BACKGROUND

Plaintiff filed an application for SSI, alleging that she had been disabled since December 25, 2010. Administrative Record ("AR") at 259-268. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 145-149, 153-157. After a hearing, Administrative Law Judge ("ALJ") Daniel G. Heely issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act. *Id*. at 125-135. Plaintiff sought review by the Appeals Council, which vacated the ALJ's decision and remanded the matter back to the ALJ for further consideration of the medical opinion evidence of record and plaintiff's mental impairments. *Id*. at 142-143.

1

Another hearing was held before the ALJ on March 18, 2014. *Id*. at 35-57. Plaintiff was represented by counsel at the hearing, at which she, a medical expert, and a vocational expert testified. *Id*. On April 30, 2014, the ALJ issued a new decision, again finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id*. at 15-30. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since September 26, 2011, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: depression, anxiety, borderline intellectual functioning, hepatitis C, skin cancer, and migraine headaches (20 CFR 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

\* \* \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926).

\* \* \*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform activities with the following limitations: She is limited to simple, routine, and repetitive tasks. She can lift and carry 25 pounds frequently and 50 pounds occasionally. She can stand for 6 hours in an 8-hour workday with normal breaks. She can walk for 6 hours in an 8-hour workday with normal breaks. She can sit 6 hours in an 8-hour workday with normal breaks. She can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold and extreme heat. She can never work around hazards, such as dangerous moving machinery and unprotected heights.

\* \* \*

5. The claimant is capable of performing past relevant work as a Fundraiser II (DOT 293.357-014; light exertional level; unskilled; SVP 2). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

\* \* \*

6. The claimant has not been under a disability, as defined by the Social Security Act, since September 26, 2011, the date the application was filed (20 CFR 416.920(f)).

*Id.* at 17-29.

Plaintiff's request for Appeals Council review was denied on February 5, 2016, leaving the ALJ's April 30, 2014 decision as the final decision of the Commissioner. *Id.* at 1-6.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

/////

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>ANALYSIS</u>

Plaintiff argues that the ALJ's decision must be reversed because: (1) his analysis contains inconsistent, unclear, and confusing findings; and (2) he failed to provide legally sufficient reasons for rejecting opinions from examining and non-examining sources. ECF No. 13-1 at 14-23.

    A.    <u>Inconsistencies in the ALJ's Decision</u>

Plaintiff first argues that remand for further proceedings is necessary because the ALJ's decision contains imprecise and conflicting findings. *Id*. at 14-17. Plaintiff contends that in a single paragraph of the decision, the ALJ found that she had both moderate difficulties and no more than mild limitations in social functioning. *Id*. at 15. She further argues that throughout the "decision, the ALJ seemed to confuse the meaning of the words 'understate' and 'overstate' making it a guessing game to figure out what the ALJ actually was finding with regarding to the medical opinions that he was supposedly crediting . . . ." *Id*. at 14. Plaintiff contends that the internal inconsistencies and misuse of words precludes meaningful review of the ALJ's findings and warrants remand. *Id*. at 14-17.

In evaluating plaintiff's mental impairments at step-three of the sequential evaluation process, the ALJ states, in the same paragraph, that plaintiff "has moderate difficulties" and "no

4

more than mild limitations in" social functioning. *See* AR 19. The paragraph containing the inconsistency in regard to social functioning begins with the statement that plaintiff "has moderate difficulties" in social functioning. AR 19. The sentence that then follows notes plaintiff's allegation of difficulty being around other people. *Id*. However, the remainder of the paragraph discusses evidence refuting plaintiff's allegation of impaired social functioning. For instance, the ALJ observed that plaintiff "demonstrated appropriate attitude, cooperative behavior, good eye contact, and appropriate facial expressions" during medical evaluations. *Id*. The ALJ then noted plaintiff's reports of spending time with her family and doing her own grocery shopping, "which shows she can be around people." *Id*. The ALJ also observed that plaintiff did not exhibit any impairment in social functioning at the hearing or during a telephone interview with a Social Security Administration ("SSA") employee. *Id*. Lastly, the ALJ found that plaintiff had "received little specialized mental health treatment, which indicates that her mental functioning is generally intact. Therefore, she has no more than mild limitations in" social functioning. *Id*. When considering the additional findings provided in the paragraph at issue, there is little doubt that the ALJ concluded that plaintiff had no more than mild limitations, rather than moderate difficulties, in social functioning.

This interpretation is reinforced by other portions of the decision. Notably, the ALJ's residual functional capacity ("RFC") determination did not include any limitations in social functioning. *Id*. at 21. Indeed, the ALJ specifically rejected the opinions of physicians finding that plaintiff was impaired in social functioning. *Id*. at 26-27. Accordingly, the inconsistency identified by plaintiff is harmless and does not warrant remand. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that a court may affirm an ALJ's decision "under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

As for plaintiff's contention that the ALJ consistently misused the words "understate" and "overstate," she is mistaken. For instance, the ALJ found that examining physician Dr. Sharma and non-examining physician Dr. Zheutlin's opinions "understate the [plaintiff's] *ability to*

5

*perform* postural activities." AR 25 (emphasis added). Stated differently, the ALJ concluded that these physicians assessed greater postural limitations than plaintiff actually possessed. This is consistent with the ALJ's RFC determination, which did not include postural limitations, and his finding that the assessed postural limitations are not supported by "the general absence of positive findings and signs concerning [plaintiff's] spine and joints in the objective medical evidence." *Id*.

The ALJ also stated that Drs. Kivowitz, Warren, and Brode's opinions "understate the [plaintiff's] social functioning *ability* . . . ." AR 26 (emphasis added).[2] As observed by the ALJ, Dr. Kivowitz opined that plaintiff was limited to only occasional interaction with supervisors, coworkers, and the public, and Dr. Warran and Dr. Brode opined that plaintiff could perform simple work with limited social interaction." The ALJ's finding that these opinions "understate" plaintiff's social functioning ability is consistent with his RFC determination that did not include any limitations in social functioning, as well as his observation that the opinions are "inconsistent with the relatively normal social functioning that the [plaintiff] demonstrated at the mental consultative examinations . . . ." *Id*. at 21, 26..

As a final example, the ALJ found Dr. Torrez and Dr. Richwerger's "opinions overstate the [plaintiff's] mental *capacity*." AR 26 (emphasis added). The ALJ noted that both physicians determined that plaintiff "had no significant mental limitations," but ultimately concluded that these physicians failed to "adequately consider the [plaintiff's] somewhat credible complaints of anhedonia, decreased energy, confusion, poor memory, and poor concentration." Thus, the ALJ's use of the "overstate" is consistent with his finding that plaintiff was more restricted than the opinions provided by Dr. Torrez and Richwerger. Accordingly, plaintiff fails to demonstrate any prejudicial error.

B.  Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in weighing the medical opinion evidence.

---

[2] Plaintiff's argument appears to be premised on a misreading of the ALJ's decision. Plaintiff contends that "if Dr. Kivowitz, Dr. Warren and Dr. Brode all "understated" the social functioning, then the ALJ was saying that the social functioning was worse than what these doctors indicated." ECF No. 13-1 at 15-16. The ALJ did not find that these physicians understated plaintiff's *limitations* in social function. He found that the physicians understated plaintiff's abilities in social functioning.

Specifically, she contends that the ALJ failed to give legally sufficient reasons for rejecting (1) opinions from multiple medical sources regarding her mental impairments, and (2) examining physician Dr. Karon's opinion that plaintiff is unable to work. ECF No. 13-1 at 17-23.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

        1.      <u>Mental Impairments</u>

Plaintiff was examined by three mental health care professionals. She was first evaluated by Dr. Silvia Torrez, Psy.D., an examining physician. *Id.* at 382-388. On examination, plaintiff's behavior was cooperative, her attitude was appropriate and no unusual psychomotor activity was noted, but her mood was dysthymic. *Id.* at 385. Her speech was logical, coherent, and concise, intellectual functioning appeared to be average, and thought content was appropriate. *Id.* Dr. Torrez diagnosed plaintiff with depressive disorder, not otherwise specified; nicotine dependence; polysubstance dependence in remission; and alcohol dependence in remission. *Id.* It was her

opinion that, among other things, plaintiff's ability to accept instruction from a supervisors was fair, and her ability to interact with coworkers was good. *Id*. at 388. Dr. Torrez ultimately concluded that despite plaintiff's "reported symptoms and history, she does not appear to be suffering from a major mental disorder at this time . . . [and] appears to be able to function adequately." *Id*. at 387.

Dr. Les Kalman, M.D., Psy.D., an examining physician, also completed a psychiatric evaluation of plaintiff. AR 565-568. Dr. Kalman observed that plaintiff appeared sickly, holding her head in hands head and complaining of migraine headaches. *Id*. at 565. Plaintiff's speech was slow, mood depressed, and effect blunted and shallow, but she was cooperative, alert, and largely oriented. *Id*. at 556-567. Her intelligence appeared below average and her insight was poor, but her judgment was fair and thought process was logical and goal directed. *Id*. at 567. Dr. Kalman diagnosed plaintiff with dysthymia, rule out major depression, and borderline intellectual functioning. *Id*. at 567. It was his opinion that plaintiff had marked limitation in understanding, remembering, and carrying out detailed instructions; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; and accepting instructions and responding appropriately to criticism from supervisors. *Id*. at 569-570. He opined that plaintiff had moderate limitations in carrying out very short and simple tasks, but only mild limitations in understanding and remembering such tasks. *Id*. It was also his opinion that plaintiff had mild limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; interacting appropriately with the general public; asking questions or requesting assistance from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; but was moderately limited in accepting instructions and responding appropriately to criticism from supervisors. *Id*. at 570. Dr. Kalman also opined that plaintiff's impairments would cause her to be absent from work three days month. *Id*. at 571.

Plaintiff was also evaluated by licensed psychologist Dr. David C. Richwerger, Ed.D., an examining consultant. *Id*. at 585-592. Plaintiff was fully oriented and her thought process was

8

normal, although somewhat vague. *Id*. at 588.  Dr. Richwerger diagnosed plaintiff with depressive disorder, not otherwise specified, and borderline intellectual functioning.  It was his opinion that plaintiff had no more than mild mental impairments. *Id*. at 591.

The record also contains three mental health assessments provided by non-examining physicians.  Dr. Warren, M.D., opined that plaintiff had moderate limitations in interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. at 100.  Notwithstanding these moderate limitations, Dr. Warren concluded that plaintiff maintained the ability to interact appropriately with peers and supervisors. *Id*. at 101.  Dr. Tawny Brode, Psy.D., also a non-examining source, concurred with Dr. Warren's opinion regarding plaintiff's social functioning. *Id*. at 117.

Lastly, the record contains an opinion from non-examining physician Dr. Julian Kivowitz, who testified at the first administrative hearing.  Based on his review of the record, Dr. Kivowitz diagnosed plaintiff with depression, not otherwise specified; borderline intellectual functioning; polysubstance abuse in remission; and alcohol abuse in remission. *Id*. at 39-10.  He opined that plaintiff could perform work involving simple, routine, and repetitive tasks with occasional contact with coworker, the general public, and supervisors. *Id*. at 41.

Plaintiff first contends that the ALJ erred in rejecting Dr. Kalman's opinion that plaintiff was limited in social functioning; an opinion that plaintiff argues is in accord with Drs. Krivowitz, Warren, Brode's opinions.  ECF No. 13-1 at 17-21.  In assessing plaintiff's RFC, the ALJ gave some weight to Dr. Kalman's opinion that plaintiff could perform simple tasks and interact appropriately with coworkers and the general public, concluding that the opinion was consistent with findings from the three consultative evaluations and plaintiff's daily activities. AR 27.  However, the ALJ found that Dr. Kalman's opinion that plaintiff was limited in her ability to interact with supervisors was inconsistent with the evidence of record. *Id*.  Specifically, the ALJ found that it was inconsistent with the normal social functioning plaintiff demonstrated during her consultative examinations, observations made by an SSA interviewer, and the absence of evidence of specialized mental health treatment. *Id*.

9

An ALJ may reject a physician's opinion that is unsupported by objective medical findings or the record as a whole. *Baston v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir.1999) (an ALJ may reject a treating opinion that is inconsistent with other evidence in the record); 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

As observed by the ALJ, it was noted that during an examination with Dr. Torrez plaintiff's behavior was cooperative, eye contact was good, facial expressions were appropriate, and responses to questions were open and honest. AR 19, 27; *see id.* 385-386. Based on his findings, Dr. Torrez ultimately concluded that plaintiff's symptoms were "considered to be within the mild range." *Id.* at 387. Similar findings were made by Dr. Richwerger, who noted that plaintiff's mannerisms were within normal limits and that although she initially appeared guarded, "she calm[ed] to some degree with occasional laughter at some of the test questions." *Id.* at 588-589. Dr. Richwerger also concluded that plaintiff's impairments caused no more than mild limitations. *Id.* at 591. Even Dr. Kalman, who assessed more severe limitations, noted that plaintiff was cooperative during examination. *Id.* 566. Additionally, the record shows that during an interview with an SSA employee, plaintiff "was cooperative[,] answering all questions necessary to complete the application." *Id.* at 280. The ALJ also noted that during the March 18, 2014 hearing, plaintiff was able to respond to questions and interact appropriately. *Id.* at 19. The ALJ reasonably concluded that this evidence undermined Dr. Kalman's opinion that plaintiff had impaired social functioning. *See Marci v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence.") (quotation omitted).

Plaintiff also contends that the ALJ failed to give legally sufficient reasons for rejecting Dr. Kalman's opinion that plaintiff would miss approximately three days of work per month due to her impairments. ECF No. 13-1 at 19. The ALJ specifically rejected that opinion, finding that the opinion was internally inconsistent with Dr. Kalman's own opinion that plaintiff had an adequate ability to maintain regular attendance. An ALJ may reject an opinion that is internally inconsistent. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see*

*also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that inconsistencies in a doctor's opinions, observations, and clinical notes "is a clear and convincing reason for not relying on the doctor's opinion."). As noted above, Dr. Kalman opined that plaintiff was only mildly limited in her ability to maintain regular attendance. AR 570. The ALJ reasonably concluded that this opinion was inconsistent with Dr. Kalman's conclusion that plaintiff would miss three days of work each month.[3]

Accordingly, the ALJ gave legally sufficient reasons for giving reduced weight to Dr. Kalman's opinion that plaintiff was limited in social functioning and would be absent from work 3 times a month.

Moreover, the court notes that the ALJ was permitted to reject the opinion of Dr. Kalman (as well as opinions from non-examining sources), in favor of opinions provided Dr. Torrez and Dr. Richwerger. All three opinions are from examining sources and therefore entitled to equal weight. Consequently, the ALJ was permitted to resolve the conflict and give greater weight to the social functional limitations assessed by Drs. Torrez and Richwerger over the more restrictive opinion provided by Dr. Kalman. *See Edlund*, 253 F.3d at 1156 (an ALJ is responsible for resolving conflicts in medical testimony); *Sheffer v. Barnhart*, 45 F. App'x 644, 645 (9th Cir. 2002) ("Because the ALJ was entitled to resolve this evidentiary conflict between conflicting opinions of equal weight, he did not need to provide specific and legitimate reasons for rejecting [two treating physicians' opinions]."). Likewise, the ALJ permissibly rejected the social functioning limitations assessed by the non-examining physicians, including Dr. Kivowitz, in favor of the examining opinions proved by Drs. Torrez and Richwerger. *See Lester*, 81 F.3d at 830 (the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician).

/////

---

[3] Plaintiff contends that Dr. Kalman opined that she "was moderately limited as far as maintaining attendance," which she argues is consistent with three absences a month. ECF No. 13-1 at 19. Plaintiff is mistaken. Dr. Kalman opined that she is mildly limited in maintaining attendance, not moderately limited. *See* AR 570 (checking the box for "Category II," which coincides with "Mildly Limited.").

11

Accordingly, the ALJ properly weighed the medical opinion evidence concerning plaintiff's mental impairments.

### 2. Dr. Karon

Lastly, plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for not crediting examining physician Dr. Karon's opinion that plaintiff was unable to work. ECF No. 13-1 at 21-23.

Dr. Jeffery Karon, an examining physician, completed a comprehensive internal medicine evaluation in February 2012. AR 438-442. Plaintiff's primary complaints were frequent nosebleeds (twice a day), recurring headaches, chronic anxiety, and extensive skin cancer. *Id*. at 438-439. Plaintiff reported that her daughter, with whom she lives, will not allow her to perform house work because her "blood is so contaminated." *Id*. at 439. On examination, plaintiff had normal range of motion in all joints and straight leg testing was negative. *Id*. at 440-441. She appeared to be in poor health, but her motor strength was 5/5 bilaterally. *Id*. at 441. It was Dr. Karon's opinion that plaintiff, due to her chronic hepatitis C, could only walk up to four hours. He further opined that plaintiff could sit without limitation, lift/carry 20 pounds occasionally and 10 pounds frequently, but only occasionally engage in postural activities due to chronic debilitation and hepatitis. *Id*. at 441-442. Dr. Karon also stated that plaintiff "has active hepatitis C and has frequent nosebleeds and thus should not be in the workforce. The nosebleeds must be eradicated and then the claimant perhaps could work on some limited basis; however, her constellation of hepatitis C, chronic headaches, and chronic anxiety make this a problematic possibility." *Id*. at 442.

Plaintiff subsequently underwent a second internal medicine consultation, this one performed by Dr. Satish Sharma, also an examining physician. *Id*. at 576-582. On examination, plaintiff had tenderness to palpation in the lumbar spine and reduced range of motion, with negative results on straight leg raising. *Id*. at 580. She had full range of motion in her upper and lower extremities with 5/5 strength bilaterally, with no swelling or tenderness of the joints. *Id*. at 580-581. Fine motor coordination was good and her gait was normal. *Id*. at 581. Dr. Sharma diagnosed plaintiff with hepatitis C, with complaints of fatigue, nausea, and abdominal cramps;

recurrent epitaxies; history of recurrent multiple skin cancers; low back pain secondary to musculoskeletal strain; chronic obstructive pulmonary disease; migraine headaches; anxiety; and depression. *Id*. at 581. It was his opinion that plaintiff could lift 25 pounds frequently and 50 pounds occasionally, stand and walk up to 6 hours per day with normal breaks, sit up to 6 hours per day, and occasionally bend and stoop. *Id*.

The record also contains opinions from two non-examining physicians. Dr. E.L. Gilpeer, M.D. opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id*. at 98-99. Dr. J. Zheultin, also a non-examining opinion, opined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. *Id*. at 113-114. Dr. Zheultin further opined that plaintiff should avoid all exposure to hazards. *Id*. at 114.

In assessing plaintiff's RFC, the ALJ accorded little weight Dr. Karon's opinion, finding that it was inconsistent with: (1) the routine and conservative nature of plaintiff's treatment for hepatitis C, (2) the lack of objective medical evidence of frequent nosebleeds and skin cancer metastasis; (3) the normal findings during both internal medicine examinations; and (4) plaintiff's admissions of receiving relief from her migraine medication. AR 26.

Plaintiff does not challenge the ALJ's rejection of significant portions of Dr. Karon's opinion. Rather, plaintiff only contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Karon's opinion that plaintiff was unable to work due to nose bleeds and the combined effect of her hepatitis C, chronic headaches, and chronic anxiety. The argument lacks merit.

Dr. Karon's opinion that plaintiff should not be in the workforce, which was rendered in February 2011, was predicated on plaintiff's reports of frequent nosebleeds. *See* AR 442. Plaintiff reported to Dr. Karon that she was experiencing nosebleeds twice a day. *Id*. at 385.

/////

13

However, as reiterated multiple times in the ALJ's decision, plaintiff testified that the medical issue related to her nosebleeds was corrected in early 2013 and, as a result, the nosebleeds reduced to "maybe twice a month." *Id*. at 49, 73. As the medical problem forming the basis of Dr. Karon's opinion was resolved, the ALJ properly rejected that opinion.

Notwithstanding her testimony, plaintiff argues that there is no evidence that the nosebleeds have completely ceased and given that she still has hepatitis C, it would be risky for any employer to place in the work force. ECF No. 13-1 at 22. Plaintiff's argument is unpersuasive. After the procedure to correct the nosebleeds, plaintiff was examined by Dr. Sharma. Plaintiff notified him that she had hepatitis C and that she still continued to have nose bleeds twice a month. *Id*. at 581. Dr. Sharma, however, did not opine that plaintiff's nosebleeds interfered with her ability to work. *Id*.

Plaintiff also notes that Dr. Karon opined that even if the nosebleeds were irradiated, plaintiff's "constellation of hepatitis C, chronic headaches, and chronic anxiety make" working on a limited basis problematic. ECF No. 13-1 at 21; AR 442. The ALJ, however, specifically addressed these other impairments. As noted above, the ALJ found that Dr. Karon's opinion was inconsistent with routine and conservative nature of treatment for plaintiff's hepatitis C, and that the evidence showed that plaintiff's migraines were controlled with medications.[4] AR 26.

In any event, the record contained conflicting opinions from two examining physicians, Dr. Karon and Dr. Sharma. As discussed above, the ALJ was tasked with resolving the any conflict between opinions of equal weight, and was not required to articulate specific and legitimate reasons for selecting one opinion over the other. *See Edlund*, 253 F.3d at 1156; *Sheffer*, 45 Fed. Appx. at 645.

Accordingly, the ALJ did not err in weighing the medical opinion evidence of record.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

---

[4] Plaintiff does not challenge these findings.

14

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 18, 2017

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE